UTAH-APEX MINING CO. et al. v. INDUSTRIAL COM-
MISSION et al.

No. 4145.    Decided September 11, 1924.    (228 Pac. 1078.)

1. MASTER AND SERVANT—WIFE LIVING APART FROM HUSBAND HELD
   NOT ENTITLED TO COMPENSATION FOR DEATH. Where wife lived
   apart from her husband and he did not contribute to her sup-
   port for over four years prior to his death, she was not entitled
   to compensation therefor, under Industrial Act, Comp. Laws
   1917, § 3140, as amended by Sess. Laws 1919, c. 63.[1]

2. MASTER AND SERVANT—BURDEN ON WIFE NOT LIVING WITH HUS-
   BAND TO ESTABLISH DEPENDENCY. Where wife was not living
   with her husband at time of his death, to be entitled to com-
   pensation therefor burden was on her to establish dependency
   upon him under Industrial Act, Comp. Laws 1917, § 3140, as
   amended by Sess. Laws 1919, c. 63.

Proceeding under the Industrial Act by Birdella Arm-
strong, for the death of Richard J. Armstrong, her husband,

---

[1] Distinguishing *McGarry et al.* v. *Industrial Commission of Utah
et al.*, 63 Utah, 81, 222 Pac. 592.

See Workmen's Compensation Acts, §§ 50, 112.

claimant, opposed by the Utah-Apex Mining Company, employer, and the Ætna Life Insurance Company, insurance carrier. After an order of the Industrial Commission awarding compensation to claimant and denial of an application for rehearing, a writ of review was brought.

Award of the Commission VACATED and ANNULLED.

*Bagley, Judd & Ray*, of Salt Lake City, for plaintiffs.

*Harvey H. Cluff*, Atty. Gen., and *J. Robert Robinson*, Asst. Atty. Gen., for defendants.

THURMAN, J.

Richard J. Armstrong, an employee of the plaintiff mining company, was killed in an accident arising out of and in the course of his employment at Bingham, Utah, October 16, 1923. The plaintiff, Ætna Life Insurance Company, carried the insurance.

On November 26, 1923, Birdella Armstrong, of Butte, Mont., claiming to be the widow of the deceased workman, filed application with the defendant Commission for compensation, under the Utah Industrial Act. A subsequent application was filed December 17, 1923, by one Laura C. Armstrong, of Salt Lake City, also claiming to be the widow of deceased. These applications were heard in due course and evidence taken, both written and oral, and the cause submitted. On the evidence so taken together with stipulation of the parties, the Commission, after finding the jurisdictional facts, including the accident and death resulting therefrom, found the following facts material to a decision of the case:

"III. That on the 26th day of April, 1913, Birdella Armstrong and Richard J. Armstrong were divorced by the district court of the Second judicial district of the state of Montana. Thereafter, on the 13th day of September, 1914, Birdella Armstrong and Richard J. Armstrong were legally remarried at Butte, Mont., and were not divorced at any time subsequent to the said remarriage of Septem-

ber 13, 1914. Subsequently thereto the said Birdella Armstrong and Richard J. Armstrong resided continuously at 2633 South Placer street, in the city of Butte, Mont., and so lived together up to on or about March or April of 1918; that on or about the date last mentioned Mrs. Birdella Armstrong became seriously and mentally ill, and owing to the severe and excessive nervous troubles of the said Birdella Armstrong, her husband Richard J. Armstrong, was compelled to and did move away from the family dwelling house and boarded elsewhere, but continued to make contributions to her and visited her weekly, and continued said contributions until on or about December, 1918, when, it being considered that it would assist the said Birdella Armstrong in recovering from her affliction should he absent himself, Richard J. Armstrong left Butte to seek employment, with no particular destination in mind; that since the 13th day of September, 1914, when Richard J. Armstrong and Birdella Armstrong were remarried, no process, notice, or other papers of any divorce proceedings or any knowledge of any divorce proceedings upon the part of Richard J. Armstrong, or herself, ever came to the knowledge or notice of the said Birdella Armstrong.

"That the said Richard J. Armstrong returned to Butte subsequent to December, 1918, and again in July, 1921, the decedent left Butte, stating he was seeking employment elsewhere, with no known destination, but advised and informed Amanda Brown, the mother of Birdella Armstrong, that as soon as he was located and had secured work he would communicate with her and arrange for the maintenance of his family. That since that time he has not been heard of until the time of his death, and his whereabouts were unknown to Birdella Armstrong.

"That owing to Birdella Armstrong's ill health, she had no source of revenue and has been receiving alms from the county poor fund of Silver Bow county, Mont. That on the date of the death of the deceased she was totally dependent upon her husband, Richard J. Armstrong, for maintenance and support; in fact, her circumstances were such that she absolutely required the assistance of her husband, Richard J. Armstrong, and had it been possible to locate him he would have been compelled by law to support his wife, the said Birdella Armstrong."

The Commission concluded as follows:

"In view of the foregoing findings the Commission concludes that on the 16th day of October, 1923, Richard J. Armstrong was killed by reason of an accident arising out of or in the course of his employment, while regularly employed at Bingham, Utah, by the Utah-Apex Mining Company, an employer subject to the State Industrial Act; that on said date the decedent left surviving him

Birdella Armstrong, his lawful wife, whose circumstances were such as to require financial support from her husband; therefore the Utah-Apex Mining Company or Ætna Life Insurance Company should pay to Birdella Armstrong, for the benefit of herself as widow of Richard J. Armstrong, deceased, compensation in the sum of $16.00 per week for a period of 312 weeks, beginning October 17, 1923; all accrued payments to date to be made in a lump sum and thereafter once every month unless otherwise ordered by the Commission; that the claim of Laura C. Armstrong, whose marriage to Richard J. Armstrong was illegal, should be denied."

The Commission entered an order in accordance with the findings.

An application for rehearing was seasonably made by plaintiffs and denied.

The case comes before us on a writ of review. It is contended by plaintiffs that the findings are contrary to the evidence, and that the conclusions are not supported by the findings. The gist of the contention is that there is no competent evidence to show that the applicant, Birdella Armstrong, was a dependent of the deceased, Richard J. Armstrong, at the time of his death, and that therefore she is not entitled to compensation.

There is no doubt, under the evidence, that Birdella Armstrong was the lawful wife of deceased at the time of his death; neither is there any doubt that she was and is in needy circumstances, and, on account of her affliction and inability to support herself, is dependent, more or less, on public or private charity for support. It becomes necessary to determine whether these and other circumstances disclosed by the record are sufficient to bring the case within the purview of the law justifying the allowance of compensation. These circumstances have impelled the court to give to the evidence the most careful and painstaking examination.

It appears from the findings, which are not in serious dispute, the deceased, after his second marriage to Birdella, in 1914, lived with her and contributed to her support until the month of December, 1918, when he left her for the reasons stated in the findings. He did not return to Butte where his wife resided until February, 1921, and during his absence of more than two years she never heard from him,

nor did he in any manner contribute to her support. On returning to Butte, as above stated, he boarded with his wife's mother until the July next following, when he again left for parts unknown. During the period from February to July, 1921, while he was in Butte, he furnished his wife no financial or other support whatever, notwithstanding her affliction and need of assistance. After leaving Butte in July, 1921, Birdella never heard from him again until the report came of his death in October, 1923. So that the undisputed evidence shows that from December, 1918, until October, 1923, when the accident occurred which resulted in his death, Richard J. Armstrong, the deceased workman, never contributed a farthing for his wife's support, notwithstanding a short portion of the time he was living in the same town and working at least part of the time. In addition to all this, the record conclusively shows she did not expect him to support her or furnish her any financial assistance. Just why such was her attitude is to the mind of the writer an insolvable problem. After testifying at considerable length as to her adverse financial circumstances and as to her husband's leaving Butte in July, 1921, without telling her where he was going, she was asked by an interrogator, whose attitude towards her was friendly, if her financial condition was such that had she known her husband's whereabouts would she have required that he support her. She said, "No, sir." The next question was, "Were you in need of financial assistance?" She answered, "Yes, sir." Then she was asked, "Did you know that your husband was legally bound to support you?" She answered, "Yes, sir." Finally, she was asked, "Why wouldn't you have exacted it, if you had known where he was"? She answered, "Well, on the treatment of my family." In response to further questioning, she reiterated her former statement that at that time she was in need of financial assistance. This testimony, as we understand the record, stands unmodified by any statement made by her either before or after the testimony, as above set forth. There is no pretense any wherein the testimony that the parties had lived together in the relation of husband

and wife, after December, 1918, or that he had in any manner contributed to her support. In these circumstances it becomes pertinent at this stage of the discussion to consider the law by which the rights of the parties must be determined.

Comp. Laws Utah 1917, § 3140, as amended in Sess. Laws 1919, p. 163,, as far as material here, reads:

"5. The following persons shall be presumed to be wholly dependent for support upon a deceased employee:

"(a)   A wife upon a husband with whom she lives at the time of his death.

"(b)   A female child or female children under the age of eighteen and a male child or male children under the age of sixteen years (or over such ages if physically or mentally incapacitated from earning) upon the parent with whom he is living at the time of the death of such parent.

"In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless a member of the family of the deceased employee, or bears to him the relation of husband or widow, lineal descendant, ancestor, or brother or sister. The word 'child' as used in this title, shall include a posthumous child, and a child legally adopted prior to the injury."

It will be observed from the statute above quoted that there is no presumption of dependency in the case of a wife unless she is living with her husband in the relation of husband and wife at the time of his death. In all other cases the question of her dependency is to be determined in accordance with the facts in each particular case.

We have briefly noted the controlling facts in the instant case. Do they bring the applicant, Birdella Armstrong, within the purview of the law justifying the award made by the Commission? This is the sole question to be determined. The facts being ascertained, the issue becomes a question of law.

In Honnold, Workmen's Comp. vol. 1, § 70, p. 224, the author, discussing the question as to who are dependents, says:

"It may be said in general terms that a 'dependent' is one who

looks to another for support, one dependent upon another for the ordinary necessities of life for a person of his class and position."

. Further on, in the same section, at page 225, the author continues:

"It follows that dependency does not depend on whether the alleged dependents could support themselves without decedent's earnings, or so reduce their expenses that they would be supported independent of his earnings, but on whether they were in fact supported in whole or in part by such earnings under circumstances indicating an intent on the part of the deceased to furnish such support."

In Dosker's Manual of Compensation Law, at page 194, the author, quoting from a Connecticut case, says:

"A dependent under the act is not necessarily one to whom the contributions of the injured or deceased workman are necessary to his or her support. The test is whether the contributions were relied upon by the dependent for his or her means of living."

In 28 R. C. L. at page 770, the rule is stated as follows:

"As a very general proposition, it may be said that a dependent is one who looked to or relied on the deceased for support and maintenance. Reliance must have been placed upon the deceased employee to provide the applicant for compensation, in some measure or to some extent, with his or her future living expenses."

The above excerpts state the general rule supported by all of the authorities. Of course, there are many exceptions not necessary to enumerate in this connection. It is sufficient to say we are unable to find any exception that brings the applicant within the purpose and intention of the statute. Speaking of the purpose of compensation statutes, it is said in 28 R. C. L. supra, at page 771:

"The purpose of the statute is to provide the workman's dependent in future with something in substitution for what has been lost by the workman's death, and, consequently, to establish dependency the applicant for compensation must show that he or she has reasonable grounds to anticipate future support from the decedent. This reasonable expectation of continuing or future support and maintenance seems to be the true criterion as to who are dependents."

The burden was upon the applicant to establish her dependency under the last paragraph of the statute, as, clearly, she was not included under the first.

The contention is made that the facts of this case bring it within the doctrine of the *McGarry* Case, a recent decision by this court, 63 Utah 81 (222 Pac. 592). It will be found, however, on examination, that the cases are clearly distinguishable. It is not necessary to review the case as the grounds for the decision are clearly set forth in the opinion, both as to the law and the facts. In regard to that case, however, it is pertinent to say that the applicant was a mere infant of tender years. It was abandoned by its father, who several years after was killed in a mine in which he was employed at Park City, Utah. The court felt compelled, under the law, to annul an award made by the Commission allowing compensation, for the reason that the Commission evidently misconceived the law applicable to the case and allowed compensation under the first paragraph of subdivision b, above quoted, in which the fact of dependency is presumed. The court held that statute did not apply because the child was not living with its father at the time of his death. The question of dependency in fact, under the last provision of the statute, was not considered, and while the court annulled the award for the reason above stated, it left the question of dependency in fact open for further consideration in the event the Commission saw fit to further consider the case in the light of the opinion rendered.

As further emphasizing the attitude of the applicant, Birdella Armstrong, and her state of mind towards the deceased, we quote the following questions and answers from her testimony:

"Q. During the six months before he went away did he give you any money? A. No, sir. Q. Do you know why he went away? A. No, sir. Q. Did you expect that he would come back? A. No, sir."

Further on she said he did not say he would write to her or send her any money; nor did she attempt to find him or make any inquiry concerning him. It seems to have been a clear case of voluntary living apart and complete acquiescence, not only as relates to their separation, but also the husband's failure to furnish her means of subsistence.

It is true the Commission found that when the deceased left Butte in July, 1921, he stated to his mother-in-law that he was going away in search of work and that as soon as he became located and had secured work he would communicate with her and arrange for the maintenance of his family. This appears in an ex parte affidavit made by the mother-in-law and is wholly unsupported by competent evidence. Indeed, the mother-in-law herself, when on the stand as a witness, in a negative way at least, refuted the statement made in her affidavit. She testified on the stand that he said nothing about going away; that she and others went to some point for an outing, and when they returned deceased had gone and she never heard from him afterwards. Ample opportunity was given the witness to confirm what she had stated in her affidavit, but she failed to confirm it, and as it is not corroborated in any manner, or at all, by competent evidence, we are compelled to disregard it.

Notwithstanding the apparent hardship of the case, viewed from the standpoint of the husband's legal duty towards his wife and his utter failure to discharge the obligations resting upon him, the court is nevertheless without authority in this proceeding to give any effect to such considerations. Our duty to declare the law as we find it and apply it to the facts of the case.

We are compelled to hold as matter of law that the applicant, Birdella Armstrong, is not entitled to compensation under the Utah Industrial Act.

The award made by the Commission is therefore vacated and annulled.

WEBER, C. J., and FRICK and CHERRY, JJ., concur.
GIDEON, J.

I concur in the order annulling the award. I base such a concurrence on the mental attitude of the widow of the deceased, as appears from her testimony. She testified that she did not receive any support from the deceased; that she had made no effort to obtain support, would not have exacted it if she had known his whereabouts, and did not expect the deceased to support her.