# UTAH APEX MINING CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

### No. 4312.  Decided March 12, 1926.  (244 P. 656.)

1. MASTER AND SERVANT—BURDEN OF ESTABLISHING DEPENDENCY IS ON WIFE LIVING APART FROM HUSBAND (COMP. LAWS 1917, § 3140). Under Comp. Laws 1917, § 3140, dependency of wife on husband is not presumed by virtue of relationship, where they are living apart at time of husband's decease, but dependency must be shown by facts, in addition to legal duty of husband, warranting reasonable probability that obligation would be performed, and burden of establishing dependency is on wife claiming compensation. [1]

2. MASTER AND SERVANT—INDUSTRIAL COMMISSION'S FINDING OF FACT ON EVIDENCE FINAL. Finding of Industrial Commission of fact of dependency will not be disturbed by Supreme Court if there is competent evidence to support it.

3. MASTER AND SERVANT—EVIDENCE HELD TO SHOW WIFE SEPARATED FROM HUSBAND HAD NO REASONABLE EXPECTATION OF SUPPORT. In proceeding by wife, separated from her husband, to obtain compensation for his death, evidence held to show no basis for reasonable expectation of future support by husband. [2]

4. MASTER AND SERVANT—FAILURE OF HUSBAND TO SUPPORT WIFE DURING LONG PERIOD OF SEPARATION, AND WIFE'S SUPPORT OF HERSELF, RAISES REBUTTABLE PRESUMPTION AGAINST DEPENDENCY OF WIFE. Evidence that deceased employee made no contribution to-

STRAUP, J., DISSENTING.

[1] *Utah Apex Min. Co.* v. *Ind. Com.*, 228 P. 1078, 64 Utah, 221.

[2] *McGarry* v. *Ind. Com.*, 222 P. 592, 63 Utah, 81; Id., 232 P. 1090, 64 Utah, 592, 39 A. L. R. 306; *Utah Apex Min. Co.* v. *Ind. Com.*, 228 P. 1078, 64 Utah, 221.

Corpus Juris-Cyc. References.

[1] Workmen's Compensation Acts C. J. p. 59 n. 61; p. 115 n. 30.

[2] Workmen's Compensation Acts C. J. p. 122 n. 40; p. 123 n. 47.

[3] Workmen's Compensation Acts C. J. p. 115 n. 37.

[4] Workmen's Compensation Acts C. J. p. 59 n. 61.

ward wife's support during long time in which they lived apart,

and that wife supported herself, raises presumption against dependency of wife, which may be overcome by showing that separation and nonsupport were temporary.

Proceeding under Workmen's Compensation Act by Pearl Mitchell Williams for compensation for death of Elmer C. Williams, her husband, opposed by the Utah Apex Mining Company, employer, and the Ætna Life Insurance Company, insurer. From an order of the Industrial Commission awarding compensation, the employer and insurer appeal.

AWARD ANNULLED.

*Bagley, Judd & Ray,* of Salt Lake City, for appellants.

*Harvey H.Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for respondents.

CHERRY, J.

This is a review of proceedings had before the Industrial Commission, under the Workmen's Compensation Act, relating to the award of compensation to alleged dependents of Elmer C. Williams, who died on May 12, 1924, as the result of an accident in the course of his employment by the Utah Apex Mining Company. On August 24, 1924, Sarah E. Williams, the mother of the deceased employee, claiming to be a dependent, made application for compensation. After a hearing an order was made on October 18, 1924, awarding her compensation as a partial dependent in the sum of $16 per week for not to exceed 90 weeks. Pursuant to this order the compensation awarded was paid to the mother for the period from the date of the employee's death to February 22, 1925. On March 3, 1925, Pearl Mitchell Williams, the wife of the deceased employee, appeared for the first time and applied to the commission for compensation, claiming to have been wholly dependent upon deceased at the time of his death. The former award to the mother was thereupon ordered suspended pending the hearing and

determination of the wife's claim. After a hearing the commission made an order vacating the first award to the mother, and awarding compensation to the wife at the rate of $16 per week, dating from February 23, 1925, and to continue for a period of 262 weeks thereafter. It is sought by this proceeding to annul the order of the commission last made upon the grounds that there is not sufficient evidence to support the finding that the wife, to whom compensation was awarded, was dependent upon the deceased employee at the time of death. This is the sole question in dispute.

.The provisions of the act relating to the question under consideration are contained in Comp. Laws Utah 1917, § 3140, and are:

"The following persons shall be presumed to be wholly dependent for support upon a deceased employe: (a) A wife upon a husband with whom she lives at the time of his death. * * * In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employe. * * *"

No claim was made that the wife was living with the deceased employee at the time of his death, but it was admitted that she had lived separate and apart from him for more than two years next preceding his death. The dependency of the wife was therefore not presumed by virtue of the relationship, but was to be determined "in accordance with the facts * * * existing at the time of the injury resulting in the death of such employe." And the burden of establishing dependency was upon the applicant. *Utah Apex Min. Co.* v. *Ind. Com.*, 228 P. 1078, 64 Utah, 221. It is plainly deducible from the statute itself that dependency is not presumed from or established by the existence of the legal relation of the wife to the husband, unless they are living together, and when, as in this case, they were not living together, dependency is not established unless something tending to show dependency, in addition to the legal duty of the husband, is shown.

In 28 R. C. L. 771, it is said:

"The purpose of the statute is to provide the workman's dependent in future with something in substitution for what has

been lost by the workman's death, and, consequently to establish dependency the applicant for compensation must show that he or she had reasonable grounds to anticipate future support from the decedent. This reasonable expectation of continuing or future support and maintenance seems to be the true criterion as to who are dependents."

And at page 773:

"If the applicant for compensation is unaided by the statutory presumption of dependency, he must present proof of the fact. Among the principal indicia of the state of dependency may be mentioned the legal obligation of support; the fact that contributions have been made in the past; the fact that the applicant has taken some action in anticipation of future contributions, and the fact that the applicant has no means of support in substitution for the anticipated contributions of the deceased. It is not to be understood, of course, that all of these elements must be proven in any particular case; but it will be true in a great majority of cases, though there will be well defined exceptions, that contribution in the past is an essential, as it is the most cogent, evidentiary fact in the proof of dependency. The legal obligation of support, when considered alone, will rarely, if ever, establish a state of dependency, or give rise to a presumption that a person is a dependent; but it may very well strengthen a weak inference arising from small or irregular contributions, or it may aid a promise of future support. Where it appears that the legal obligation had been neglected by the deceased immediately prior to his death, the issue of dependency must be resolved ordinarily with reference to the duration of the period of non-support. * * *"

In cases where the employee upon whom the legal duty of support rests has deserted his dependents, and has wrongfully evaded or neglected his obligation to them, it is a proper inquiry whether the facts and circumstances warrant the reasonable probability that the legal obligation would have been enforced in future. And it can easily be supposed that when such reasonable probability exists, a state of dependency, under the statute, might be found.

In the case at bar, to establish her dependency upon deceased, it was incumbent upon the applicant to show not only that deceased owed her that legal duty of support, but that there was a reasonable expectation that the duty would be fulfilled; in other words, that the legal obligation of support must be coupled with such other facts and circumstances

as to warrant the reasonable probability that such
obligation would be performed. The commission hav-    2
ing found the fact of dependency in this case, that
finding will not be disturbed by this court if there is com-
petent evidence to support it. It remains to examine the
record and to ascertain, as a matter of law, if it contains
evidence supporting the ultimate fact that the applicant was
a dependent of deceased at the time of his death within the
meaning of the statute.

The facts as testified to by applicant are that she and
deceased were married at Blackfoot, Idaho, on October 29,
1918. She was then 15 years of age and he was 20. They
lived together at Blackfoot for two weeks, after which she
says, "I had to go to work in order to get food and stuff
and necessary things of life." Shortly thereafter she and
her husband went to his mother's ranch near Blackfoot,
where they lived for a short period, and where she testified
that "his mother was really supporting him." She then
left him and went to live with her sister at Aberdeen, Idaho,
"because he didn't have the means to support me." She
afterwards worked at Pocatello in the railroad shops and in
confectionaries to support herself, and later went back to
the ranch, where she lived with her husband "the biggest
part of that winter. He just did chores, and such as that.
Just a little farming, not much." While on the ranch her
husband gave her no money. "All we got was what we ate
and a place to sleep." In the spring he went to Salt Lake
City and joined the army, and she went to Pocatello to work.
In three or four months he visited her at Pocatello, and
"went back to the camps and stayed about another month,
and then he got out." Thereafter she and her husband
again went to the ranch and stayed there for two weeks, at
the end of which time they again separated. She went to
Pocatello, where she stayed with her brother and worked at
odd jobs until about the month of June, 1922, when she went
to her mother at Morehead, Kan. She did not thereafter see
her husband, wrote no letters to him, and received none
from him, although she testified that she "kept track of
him" through her sister. She remained in Kansas about two

years, during which time she supported herself by canvassing. In the spring of 1924 she came from Kansas to Price, Utah, when she made no effort to locate her husband, to see him, or communicate with him. She supported herself by canvassing while at Price, and did not learn of her husband's death until three or four months after it occurred. She testified, and there was other proof to show, that about a year after her marriage some steps were taken towards obtaining a divorce for nonsupport, but that the matter was dismissed upon her husband's promise to support her. She said that he did not keep his promise, that he did not try to get work, was lazy, and did not support himself; that the reason she was required to go to work was because he could not furnish her with the necessaries of life. She testified that she was able to and had earned about $15 per week by her own labor ever since her marriage, except during the short periods when she lived with her husband. She further stated that she wrote to her sister ''all the time asking about him,'' and to find out whether he was working, and that she would have gone back to live with him and demanded his support if he had been working; that her sister lost track of him when he came to Utah; and that she never knew he had been working in Utah until after his death.

Mrs. Jennie Nelson, a sister of applicant, testified to the marriage of the applicant and deceased; that ''when he was able to maintain a home they were together, and when he wasn't they both worked;'' that when they were not together witness tried to keep track of the whereabouts of the husband as near as she could, with an idea of keeping them together; that her sister was willing to live with her husband and manifested a desire to go back to him; that when her sister went to Kansas she wrote to her telling her where her husband was located; that she never entirely lost track of the deceased, but did not learn of his death until two or three months thereafter, when she promptly notified his wife at Price.

The foregoing is the sum of the evidence depended upon to support the finding of dependency. There was other uncontradicted evidence produced by the opposing side tend-

ing to show that the separation between deceased and his wife was permanent; that deceased had been employed on numerous occasions and for considerable periods after he had separated from his wife, at which times he had made substantial contributions for the support of his mother, that he contemplated a divorce from his wife and marriage with another woman. 3

But, viewing the matter from the standpoint alone of the evidence adduced by the applicant wife, we look in vain for any fact or circumstance, other than the legal duty of deceased, to indicate that there was a reasonable probability that that duty would have been fulfilled, either voluntarily or involuntarily. On the contrary, the additional facts and circumstances elicited plainly tended against the probability of future support.

The case as stated by the applicant presented three outstanding facts: First, that the parties were living separate and apart for a considerable period of time; second, that the husband during that period made no contribution whatever towards the support of his wife; and, third, that the wife was able to and did support herself. The natural presumption from these facts is against dependency. Of course that presumption might be overcome by proof explaining the separation and nonsupport as temporary, and indicating a mutual purpose and intent to live together again and be supported by the husband. But here the explanation, so far as given, indicates the very contrary. The facts and circumstances show that the separation occurred by reason of the neglect of the husband, which continued so long that the wife finally removed to a distant state and remained two years, during which time she did not see nor communicate with her husband or look to him for support, but supported herself by her own efforts. There was nothing in her conduct during this time from which it can be inferred that she entertained the least expectation of ever being supported by her husband. When she returned to Utah before the death of her husband she lived independently upon her own earnings, and did nothing towards discovering her husband and reuniting with him or demanding that he support her.

In this state of facts we are compelled to conclude that there was no proof, aside from the legal obligation of deceased, upon which to base the conclusion that there was a reasonable expectation of future support 4 by the deceased. This conclusion is not opposed to what was said or decided in *McGarry* v. *Ind. Com.*, which was twice before this court. 222 P. 592, 63 Utah, 81; 232 P. 1090, 64 Utah, 592, 39 A. L. R. 306. That case involved the claim of a minor child, seven years of age, whose father had deserted it, and left for parts unknown, and concealed his whereabouts and identity for two or three years and until his death. This court decided that it was further shown that the child was actually dependent; that the peculiar and exceptional circumstances present would support a finding that the child was a dependent of its father, within the meaning of the statute. The actual dependency of the child, its lack of legal capacity to assert or waive its legal right to support from its father, and the conduct of the father in concealing himself to avoid his legal duty are features which clearly distinguish that case from the one under review. In *Utah Apex Min. Co.* v. *Ind. Com.*, 228 P. 1078, 64 Utah, 221, the claim of a wife to be adjudged a dependent was denied. The parties had lived apart for four years, during which time the husband had made no contributions to his wife's support. She testified that her husband had left her, and that she did not expect him to come back or to support her or furnish her with any financial assistance. In each of the cases last cited there was present the legal obligation of support, and the ultimate test in each case was the probability of future support.

It follows that the finding that applicant was a dependent upon deceased at the time of his death must be set aside for lack of evidence to support it.

The award is annulled.

GIDEON, C. J., and THURMAN, and FRICK, JJ., concur.

STRAUP, J. I dissent . It may be conceded that when a wife is living with her husband at the time of his death the

Certiorari

statute presumptively makes her a dependent; but when living separate and apart from him the question of dependency is to be determined in accordance with the facts. But in making such determination the fact that she then was his wife is still an important factor or element. She not living with him, I think the cause, or causes, and the circumstances of her living separate and apart, or whether she had or had not forfeited or abandoned her legal right to his support, are of controlling importance. I readily see that a wife who, without cause or excuse, deserted her husband, and against his will lived separate and apart from him, in effect forfeited her right to support from him, or not looking to him for support and expecting none, is not a dependent. But how about a wife who, without fault, is living separate and apart from her husband and out of necessity is compelled to earn her own living because of his failure to support her, due either to his inability or to his willful neglect, not acquiesced in or condoned by her, and who has not forfeited her legal right to support from him?

The facts and circumstances of the applicant's living separate and apart from the deceased are recited in the prevailing opinion. Upon them I do not see anything to justify a finding—much less a conclusive finding—that she, in so living separate and apart from him, in any particular was at fault, or had forfeited her legal right to support from him, or had violated any of her marital obligations. The facts but show that she so lived separate and apart from him and was compelled to earn her own living because of his inability to support her or because of his neglect to do so, or both. But I do not see wherein she had acquiesced in or condoned any such conduct on his part, or had forfeited her legal right to look to him for support. In other words, on the disclosed facts, her status as a wife was in all legal respects the same as though she had been living with him at the time of his death. I do not see wherein it was any different, except as to the method of making the status and dependency evident. In the one instance, the parties living together, the dependency is made evident by the mere statutory presumption. In the other, where they

are not living together at the time of the husband's death, the dependency may be, as it here is, made evident by the facts. That is, the disclosed facts here show all that is embodied in or implied by the presumption. To say that the applicant is not entitled to any award because the deceased had not contributed much if anything toward her support is but to say that a wife, though living with her husband at the time of his death, is entitled to no award if he had not during the marriage relation contributed much if anything toward her support, by reason of which she was compelled to earn her own living.

Further, the applicant was only 15 years of age when the deceased married her—but a mere child wife—and had no means of support except by her own labor. That she had consulted a lawyer with the view of a divorce and abandoned such action upon the deceased's promise to support her tends to show that she looked to him for and expected support from him. On the record, I think it fairly inferable that their living separate and apart was only temporarily and until circumstances admitted of their living together, or until the deceased had means or opportunity to support her. At any rate, on the record I do not see any conclusive disclaimer on her part. No such disclaimer should be inferred from the fact that the deceased had not contributed much if anything toward her support.

On the record I can see different opinions might well be entertained as to the amount of the award; but I do not think that the applicant's claim should wholly be denied.